UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

SOCAL POWERSPORTS INC.,

         Plaintiff,

vs.

THE TIMKEN COMPANY, and

SHANE SMITH

         Defendants

Case No.:

**COMPLAINT**

1.     Plaintiff SoCal Powersports Inc. ("Plaintiff"), by and through its counsel, for its Complaint against Defendants The Timken Company ("Timken") and its agent, Shane Smith, alleges as follows:

**INTRODUCTION**

2.     This is not a case of infringement from unauthorized use of a trademark.

3.     This is a case of a company (Timken) that bought a brand then changed its name slightly and filed infringement reports against sellers of the existing inventory that still had the name of a prior owner.

4.     The product, a belt used in motors, had been offered for sale on <amazon.com> ("Amazon") for many years under the ULTIMAX brand name.

5.    After purchasing the brand name, Defendant The Timken Company ("Timken") hired a seller on Amazon, Defendant Shane Smith ("Smith") who was willing to file trademark infringement reports on behalf of the brand as its agent rather than work with the Amazon Catalog Team to update the product listings to reflect the new owner's name.

6.    This is also a case of a company that decided to change its policies regarding online sales of its products, announced that policy change two days later to known sellers of its products (like SoCal), and then began a program of driving sellers off the online marketplaces (like Amazon) to reduce seller competition for those products online and in retail stores.

7.    Smith took to the task with gusto, filing some 267 infringement reports against his competitor, Plaintiff SoCal Powersports Inc. ("SoCal"), in the span of 2 ½ weeks.

8.    SoCal was surprised because it always bought its Timken products from wholesale distributors who were authorized to sell the Timken products to SoCal for resale. Timken knew this.

9.    The effect of Smith's large number of filings in such a short time span was devastating to SoCal's business and its Account Health Rating ("AHR") on Amazon. Amazon suspended SoCal's selling privileges for all products and deactivated its listings. SoCal was out of business and the competition it

COMPLAINT - 2

represented was removed from Amazon. The goals of both Smith and Timken were achieved.

10. Efforts to appeal the reports and the suspension to Amazon based on product receipts from the wholesalers were unsuccessful as Amazon no longer accepted receipts as proof of authenticity. Amazon needed a retraction of the complaints done only through the same Brand Registry system that was used to file the reports and then only within 180 days from when those reports were filed.

11. When asked to retract the complaints through the Brand Registry system in a timely manner, Timken and Smith refused.

## THE PARTIES

12. Plaintiff SoCal Powersports Inc. is a California corporation with offices in San Marcos, California.

13. Defendant The Timken Company ("Timken") is a corporation organized under the laws of the state of Ohio and headquartered in North Canton, Ohio.

14. Defendant Shane Smith ("Smith") is an individual residing at 691 E Daugherty Rd, Neosho, Missouri 64850 with an address for his company, Mass Depot, of 4500 Doniphan Dr Neosho, MO, 64850-9122.

**JURISDICTION AND VENUE**

15.     The Court has subject matter jurisdiction over this action pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq., including 15 U.S.C. § 1121 and § 1125; and 28 U.S.C. §§ 1331, 1338, and 1367.

**BACKGROUND FACTS**

16.     For many years, Timken made and sold engineered bearings and power transmission products.

17.     A company called Dayco used to own the brand ULTIMAX for transmission belts.

18.     The Carlisle company then bought the ULTIMAX brand from Dayco.

19.     Timken bought the ULTIMAX brand from Carlisle.

20.     On September 30, 2021, Timken announced that Carlisle and Dayco branded belts would now be sold under the new name ULTIMAX. (*Exh. 1.*)

21.     Timken objected to any advertisement of Ultimax belts using the words "Carlisle" or "Dayco" anywhere including brand field, title, and/or product packaging images even though its own publication referenced the Carlisle product. According to Timken's publication, "Timken Belts has ISO 9001:2015 certified manufacturing facilities in Springfield, Mo. and Fort Scott, Kan. 'We make

COMPLAINT - 4

Timken® belts in the same factories and to the same specifications as Carlisle belts'".

22.     Existing inventories of ULTIMAX belts in warehouses, common wholesale distribution channels, and inventory held by Amazon on behalf of various sellers  still have the Dayco and Carlisle names on the labels at the time Timken filed trademark complaints with Amazon.

23.     Timken has not recalled these older ULTIMAX products or offered to replace existing inventories with the newer, Timken-branded ULTIMAX belts.

24.     On December 17, 2023 Timken notified SoCal by email that Timken had updated its brand guidelines to include a new policy that prohibited online sales through third-party websites and a new Minimum Advertised Price ("MAP") for those products. The policies announced were retroactively effective as of two days earlier and promised to "take that into consideration to allow you an opportunity to update your online content" and made no mention of products that had been purchased earlier and were already in the retail inventories. (*Exh. 2.*)

25.     The product listings on Amazon under which SoCal was selling the Timken products could not, however, be changed or updated by SoCal. The changes could only be made by Timken or Amazon.

COMPLAINT - 5

26.    In the powersports industry, Timken belts are now supplied to powersports distributors under the Ultimax® brand as premium performance belts ("the Ultimax Products").

27.    Timken is the owner of U.S. Trademark Registration No. 3,167,638 for ULTIMAX on "Land vehicle parts, namely, power transmission and drive belts" ("the Ultimax Registration").

28.    As Timken acknowledged, "Timken belts are supplied to industrial distributors and original equipment manufacturers who seek the optimum in quality and service. . ." (*Exh. 1*.)

29.    SoCal was an authorized distributor of the Carlisle products and understood that it would continue to be an authorized distributor after the brand name change.

30.    In a letter to Amazon dated April 15, 2024, Timken confirmed that SoCal is an authorized seller of the Ultimax Products. (*Exh. 3*.)

31.    Plaintiff used to resell the Timken products through an Amazon storefront until its selling privileges were suspended. Plaintiff no longer sells Timken products.

32.    Since its formation, Plaintiff has served hundreds of thousands of customers through its Amazon storefront.

COMPLAINT - 6

33.     Defendants' illegal actions have irreparably damaged, and threaten to destroy, Plaintiff's successful business.

## THE AMAZON ONLINE MARKETPLACE

34.     On information and belief, Amazon is the world's largest online retailer.

35.     According to published reports, Amazon is worth more than the next eight largest retailers located in the United States combined. See JP Mangalindan, Amazon is now worth more than America's 8 largest retailers combined, *Yahoo Finance* (Jan. 25, 2017), https://finance.yahoo.com/news/amazon-is-now-worthmore-than-americas-8-largest-retailers-combined-124101625.html.

36.      Amazon's online e-commerce platform allows for third parties, like Plaintiff, to sell products on its e-commerce platform.

37.     The privilege of selling on Amazon is highly advantageous, as Amazon provides third parties with exposure to the world marketplace on a scale that no other online retailer can currently provide.

38.     For several years, Plaintiff has had a contractual and business relationship with Amazon, such that Plaintiff was and is permitted to sell products on Amazon's e-commerce platform.

39.     Third-party sellers, like Plaintiff, create an online storefront on Amazon. When a customer buys a product on Amazon, the customer can see the

COMPLAINT - 7

online store from which the customer is purchasing a product. Thus, Plaintiff has the online equivalent of a brick-and-mortar store.

40.     A significant portion of Plaintiff's business is derived from the sale of products on Amazon and, in particular, through its Amazon storefront.

41.     Once Plaintiff acquires products from reputable sources, Plaintiff resells the same products on Amazon at a profit.

42.     In general, transactions on Plaintiff's Amazon storefront are completed by SoCal in a process known as "Fulfilled by Merchant" or "FBM" or by a contractor.

43.      Plaintiff has invested significant efforts into building a successful and reputable Amazon storefront.

44.     Plaintiff's Amazon storefront has amassed over 9,500 reviews and holds a near-perfect customer rating.

## SoCal Powersports

Visit the SoCal Powersports storefront

★★★★½ | **93% positive** in the last 12 months

---

🎖️ **Protected by A-to-z Guarantee** The Amazon A-to-z Guarantee protects y

★★★★★ 4.8 out of 5
9,571 ratings

| Lifetime ⌄ |

| 5 star | 89% |
| 4 star | 7% |
| 3 star | 1% |
| 2 star | 0% |
| 1 star | 2% |

45. A small sample of Plaintiff's recent reviews are shown below:

**Lifetime** Clear filter

9571 total ratings, 9570 with feedback ⓘ

★★★★★  "quick shipping ,just as advertised, thanks"

By cjhans on March 24, 2024.

★★★★★  "Great seal kit for complete rebuild on an anniversary edition YZF250. Arrived a little earlier than expected"

By Daniel G. on March 24, 2024.

★★★★★  "Quick Fast and as advertised. Great Seller"

By Ben on March 18, 2024.

★★★★★  "as described"

By Eduardo La Riva on March 12, 2024.

★★★★★  "Great"

By Stephen on March 4, 2024.

COMPLAINT - 9

46.     A seller's feedback rating on Amazon is one of the few indicia that a buyer has to provide trust that any purchase will be trouble-free. As Amazon explains how its feedback system works:

> **⌃ Learn more about how seller reviews work on Amazon**
>
> Seller feedback, including seller star ratings, helps customers learn more about a seller and the order experience they can expect if they chose to make a purchase. To calculate the overall star rating and percentage breakdown by star, our system considers a variety of factors. For example, if a negative order experience is the fault of Amazon and not the seller, we remove the rating from the seller's overall star rating calculation and strike through the feedback text with the statement ' This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.' To see all negative reviews, regardless of their strike through stat us, you may click the star rating bars.

47.     Any harm that comes to the relationship between Plaintiff and Amazon creates a potential for serious and irreparable injury to Plaintiff.

**DEFENDANTS' ATTEMPT TO STIFLE COMPETITION BY FILING FALSE INTELLECTUAL PROPERTY COMPLAINTS**

48.     On information and belief, Timken sought to increase its profits by controlling the distribution and pricing of their products, including the Ultimax Products, through unlawful means.

49.     As demonstrated below, Timken used Smith to engage in a coordinated effort to preclude select third parties from reselling genuine Ultimax

COMPLAINT - 10

Products on Amazon by filing an extraordinary number of false allegations of intellectual property infringement in a relatively short time frame.

50.     On information and belief, the purpose of these false complaints and defamatory statements was to prevent Plaintiff from selling genuine Ultimax Products on Amazon.

51.     On information and belief, the purpose of these false complaints was to damage Plaintiff's reputation with Amazon and harm its accumulated goodwill, such that Amazon would suspend or terminate its relationship with Plaintiff.

52.     Because Plaintiff sells only genuine products through its Amazon storefront, Timken had no legitimate intellectual property claim(s) against SoCal.

53.     Under the first sale doctrine, Plaintiff is lawfully permitted to re-sell Ultimax Products without violating the intellectual property rights or other legal rights of Timken. See *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 369 (6th Cir. 2007) ("It is true that trademark law contains a 'first sale' exception that provides a defense to claims of infringement. Under the exception, resale by the first purchaser of the original trademarked item is generally neither trademark infringement nor unfair competition.")

54.     SoCal resold the Ultimax Products in their original packaging without changes to the product that might introduce a material difference to those products.

55.     It is well-known among brand owners and any seller on Amazon  that Amazon has a policy of acting on virtually any notice of intellectual property infringement, whether legitimate or not.

56.     As one Amazon expert explained:

> In order to meet a minimum liability standard, Amazon will act upon properly submitted and completed notice claims of infringement. They will notify specified marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. The rest though, is up to you. And, unless you (and possibly your legal team) can prove that the Notice claim is false, Amazon considers it valid and actionable.

> Amazon does not independently investigate whether a filed report is factually supported before it takes action.

> Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form. Amazon [is] not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications.

> They don't independently verify that any of the information is actually correct, or valid. The rights owner makes a legally-binding declaration in the form, and signs it.

See Chris McCabe, "False Infringement Claims are Rife on Amazon," WebRetailer (Apr. 11, 2018) (*Exh. 4* at p. 1) (emphasis added).

57.     On information and belief, Timken and its agent Smith were, at all relevant times, aware of the foregoing Amazon policy with respect to reports of intellectual property infringement.

COMPLAINT - 12

58.     Each complaint submitted to Amazon was signed by a Timken employee or by Smith as an agent of Timken under penalty of perjury. See https://www.amazon.com/report/infringement (last visited November 21, 2024):

**Are you the Rights Owner or an Agent?**
○ Rights Owner
● Agent

**Are you a seller on Amazon?**
● Yes
○ No

59.     For example, when submitting an infringement report to Amazon (https://www.amazon.com/report/infringement) (last visited November 21, 2024), the submitter must read and accept the following statements:

"By clicking Submit:

I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law.

I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above.

I understand that, if accepted, the information included in this report may be shared by Amazon with all the reported sellers, with the exception of any order ID number(s).

I understand that submitting false or inaccurate complaints against other sellers may result in the suspension or termination of my Amazon selling privileges."

60.     On information and belief, the complaints were submitted by Smith as an agent of Timken under penalty of perjury.

61.     Timken and its agent Smith committed perjury in the filing of infringement complaints against SoCal that were known to be false and factually inaccurate, incomplete, and misleading.

62.     Committing perjury towards a goal of suppressing competition on Amazon represents an unfair and improper act.

63.     On information and belief, Timken and Smith were, at all relevant times, aware that Amazon will act on reports of trademark infringement, regardless of the truth of the report.

64.     On information and belief, Timken and Smith were, at all relevant times, aware that Amazon will not independently verify that a product is infringing and that Amazon will rely completely on the complainant's retraction of the filed reports.

65.     On information and belief, Timken and Smith were aware that Amazon does not provide adverse consequences for a complainant who files false reports under penalty of perjury.

66.     Defendants filed false complaints with Amazon that alleged that Plaintiff was selling infringing Ultimax Products and infringed the Ultimax

COMPLAINT - 14

Registration and knew that there would be harm to SoCal's selling privileges if they refused to timely retract the complaints in the specific manner required by Amazon.

67.     Timken and Smith knew, or should have known, that such allegations were false.

68.     Defendants' allegations of infringement were objectively unreasonable sham submissions made in bad faith in an effort to prevent Plaintiff's resale of genuine Ultimax Products on Amazon's e-commerce platform.

69.     The harm to SoCal as a consequence of the acts of perjury committed by Timken and Smith in the Amazon reports was reasonably foreseeable.

70.     For example, on or about November 30, 2023, Plaintiff received a notice from Amazon stating as follows:

> Hello,
>
> We are contacting you because we received a report of trademark infringement from the rights owner listed below. Sellers on Amazon.com are not allowed to create listings or detail pages that infringe trademark rights.
>
> We removed the content listed at the end of this email. We may let you list this content again if we receive a retraction from the rights owner. Their contact information can be found below.
>
> shane
> shane@massdepot.com
>
> How do I reactivate my listing?
> Please visit the Account Health page in Seller Central (https://sellercentral.amazon.com/performance/dashboard?ref=ah_em_nr) to appeal this listing deactivation. Please click on the "Appeal" link next to the listing in the "Product and Policy Violations" section on the account health page.

COMPLAINT - 15

If the rights owner does not retract their complaint, or you do not provide supporting information, we may provide your contact information to the rights owner upon their request.

We consider intellectual property infringements a serious matter, and your account is under review. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.

 ASIN: B003YI3GY2
Title: Ultimax 22-140-4748U4 Ultimax Pro Drive Belt

Infringement type: Trademark
Trademark: 3167638
Complaint ID: 14399857811

Sincerely,

Seller Performance Team
https://www.amazon.com
                    Amazon.com

71.    The above report relates to an Ultimax Product, which is referenced by its Amazon Standard Identification Numbers ("ASIN").

72.    The Ultimax Product identified in the above report was genuine.

73.    In comments submitted with a complaint, Smith asserted on behalf of Timken that "A brand called 'Carlisle' is using our Ultimax trademark on the packaging"  knowing that there are still belts in circulation in established distribution channels that have the Carlisle name on the label and that Carlisle was the previous brand owner of the ULTIMAX mark.

74.    In making this assertion, Smith and Timken were purposefully deceptive and misleading.

75.    SoCal bought all of its Ultimax/Carlisle products from authorized distributors, e.g., Parts Unlimited in Janesville, WI and Automatic Distributors of

Bangor, Maine. Minimal effort would have been required to verify the source of SoCal's products, e.g., an email to your distributors asking if anyone had sold Ultimax/Carlisle products to SoCal. Indeed, Ultimax later acknowledged that SoCal is an authorized reseller of the Ultimax products. (See the listing of affected ASINs in *Exh. 3*.)

76.     The Ultimax Product identified in the above report was made and sold by, or under the direction of Timken.

77.     On information and belief, prior to filing the above report, Timken and Smith knew, or should have known, that the Ultimax Product sold by Plaintiff was not infringing.

78.     On information and belief, prior to filing the above report, Defendants knew, or should have known, that the Ultimax Product sold by Plaintiff did not infringe the above cited Ultimax Registration.

79.     On information and belief, Defendants' allegation that the above Ultimax Product was infringing was knowingly false and made in bad faith.

80.     In total, Defendants filed at least 267 reports with Amazon in the period between November 30, 2023 and December 17, 2023 alleging that SoCal was selling infringing Ultimax products. (*Exh. 5*.)

81.     On information and belief, prior to filing the above reports, Defendants knew, or should have known, that the Ultimax Products sold by Plaintiff did not infringe the above cited Ultimax Registration.

82.     Each of the filed reports was false and calculated to mislead Amazon so as to induce Amazon to act against SoCal under false pretenses.

83.     Defendants Timken and Smith filed false infringement complaints against SoCal when Defendants know SoCal was selling products under authorized product detail pages under the control of Timken.

84.     As a registered brand owner, Timken should have modified the Amazon listings to reflect the new brand name. The product catalog on Amazon.com is owned by Amazon.com and only Amazon.com or the registered brand owner (if registered) can make catalog modifications.

85.     Plaintiff did not have the ability to modify the product details of the Amazon listings for the Carlisle/Ultimax products.

86.     When challenged about the complaints, Defendants refused to rescind or retract the complaints.

COMPLAINT - 18

## HARM TO PLAINTIFF

87.     As a result of the above false rights complaints, Plaintiff's listings relating to Ultimax Products were suspended, resulting in an immediate loss of revenue.

88.     It is well known that complaints to Amazon put Amazon sellers in jeopardy of a full selling suspension, meaning that Plaintiff's ability to sell any and all products on Amazon would be lost.

89.     On information and belief, Defendants were aware that complaints to Amazon, particularly those alleging trademark infringement, result in seller suspensions.

90.     On information and belief, Defendants have used these same tactics, namely filing false infringement complaints, against other Amazon sellers.

91.     Here, Amazon alerted Plaintiff that its selling account would be suspended as a result of Defendants' false complaints.

92.     At no time has Plaintiff ever sold Ultimax Products that infringed any of Defendants' intellectual property or other legal rights.

93.     The Ultimax Products sold by Plaintiff were, at all times, authentic products bearing the name of the manufacturer, and were otherwise, at all times, sold lawfully.

COMPLAINT - 19

94.    Defendants knowingly made false intellectual property rights complaints against Plaintiff.

95.    On information and belief, the true purpose of these complaints was to ensure the suspension of Plaintiff's marketplace listings, control pricing, and eliminate fair competition.

96.    Smith is a direct competitor to SoCal on Amazon.

97.    As result of Defendants' false complaints, Plaintiff's performance metrics were irreparably damaged.

98.    It is well-known that as much as 90% of all Amazon sales occur from Amazon's "buy box," a section of an Amazon product detail page where customers can add a product to their cart.

99.    Amazon determines which seller gets the "buy box" based on a number of factors, including the seller's performance metrics.

100.    Defendants' false complaints have damaged Plaintiff's metrics and caused Plaintiff to lose the "buy box" on many of its product listings.

101.    Plaintiff's selling privileges on Amazon were suspended in February 2024. This suspension meant that Plaintiff's business as to all products, including the Ultimax products, were shut down.

COMPLAINT - 20

102.  With the help of an expensive consultant and countless hours of painstaking work, Plaintiff was able to get its Amazon account reactivated in August 2024.

103.  The complaints filed by Timken did damage to Plaintiff's seller account beyond the scope of the typical, isolated, complaint.

<u>The Account Health Rating Measures Reputation on Amazon</u>

104.  The operation of Amazon's Account Health Rating ("AHR") for sellers is important to Plaintiff's claims herein.

105.  All sellers start with 200 points.  The maximum that can be attained is 1000 points.  An AHR under 100 is grounds for deactivation.

106.  Each of these complaints filed by Timken carried a weight of -16 points that are subtracted from the AHR as a high impact repeat violation.

107.  For every 200 orders within 180 days, sellers gain +4 points.

108.  The actions of Timken and Smith have caused harm to Plaintiff's AHR by a reduction of 3424 points impact which dropped Plaintiff's AHR score with Amazon to well below 0.  That impact to the AHR score is why Plaintiff's account was deactivated.

109.  When an account is deactivated, a seller must successfully appeal the violations to be reinstated. They do not drop off the seller's account after 180 days like they would for an active seller.

COMPLAINT - 21

110.    Because Timken did not properly retract the complaints through its Brand Registry account, Plaintiff no longer had the countervailing benefits of its orders towards restoring its original AHR.

111.    The damage to Plaintiff's AHR due to the filings by Timken is a reputational harm that cannot be effectively recovered from absent judicial action.

112.    Every day Timken refused to retract the complaints moved Plaintiff further away from being able to be reinstated without significant intervention by Amazon leadership.

113.    Because of these complaints filed by Timken, Plaintiff no longer has the benefit of the positive impact on SoCal's Amazon Account Health Rating ("AHR") that that its order count would have provided, nor does Plaintiff have the benefit of the typical Amazon practice that violations over 180 days are not construed against the account.

114.    Between 8/24/2023 – 2/20/2024 (180 days to date of deactivation), SoCal's order count was 15,587 with an average order total of $75.  According to the published AHR calculation of 4 AHR points per 200 orders, Plaintiff's 180-day orders would be worth 311 AHR points. Including the 200 point baseline given to all sellers, Plaintiff's had +511 AHR points in their favor before Defendants targeted SoCal with infringement reports.

115. Each of the complaints filed by Timken carried a weight of -16. Defendants' actions caused a drop of -3424 points in SoCal's AHR rating.

116. Defendants' actions have resulted in harms to SoCal that include account deactivation, loss of product sales during the period of deactivation, diminished sales after reactivation due to the damage to its AHR rating, a loss of trust by Amazon's leadership, and a continuing low score that precludes SoCal's ability to get the Buy Box for its product offerings. The scale of the damage is effectively unrecoverable.

117. On information and belief, Smith intentionally misused the Brand Registry tool to file an inordinate number of trademark infringement reports with Amazon that it would foreseeably result in the suspension of SoCal's selling privileges and a continuing harm to its ability to sell products on Amazon.

118. All the product detail pages referenced in Timken's reports were created years ago before the CARLISLE brand was rebranded to ULTIMAX.

119. Timken had other ways to correct the listings on Amazon for the rebranded CARLISLE products that would not have harmed Plaintiff like the conduct it chose to use.

120. Plaintiff has received no complaints from Ultimax or from Amazon customers regarding inauthentic items.

COMPLAINT - 23

121.   During this time, Plaintiff filed appeals to Amazon and included invoice receipts showing authenticity of the Ultimax Products it was selling. Substantially all (90%) of such appeals were rejected.

122.   Ultimately, Plaintiff sought a letter of authorization from Timken.

123.   Timken rejected these requests multiple times.

124.   SoCal was instructed by AHS to ask Timken to revise the letter repeatedly to include more details about SoCal's seller account and the type of intellectual property SoCal was authorized to use. This only resulted in the letter being rejected because it appeared "altered" or "inauthentic".

125.   The letter was not altered and it is authentic.

126.   The sheer number of complaints directly resulted in the deactivation of SoCal's selling privileges shortly thereafter as to any product.

127.   The complaints were false and unjustified.

128.   When SoCal asked Defendants to retract the complaints correctly through the Timken Amazon brand registry account, they refused.

129.   It is now too late to retract the complaints using the Brand Registry.

130.   By its actions, Timken caused irreparable damage to SoCal's Amazon seller account that continues to harm SoCal.

131.   SoCal's account was deactivated as a direct and proximate result of the actions of Defendants.

COMPLAINT - 24

132.  All of SoCal's offers for Ultimax products remain deactivated.

133.  SoCal's business lost some $2.4 million in sales during the period its account deactivated as to the sale of any products, including the Ultimax products.

134.  SoCal continues to suffer the effects of the attack on its reputation, sales, and damage to its AHR with Amazon.

## COUNT I - DECLARATORY JUDGMENT
### (No Trademark Infringement – As to Timken)

135.  Plaintiff realleges and incorporates previous allegations in paragraphs 1-124.

136.  Defendant Timken manufactures and distributes ULTIMAX Products and place such products into the stream of commerce.

137.  Timken is the owner of the ULTIMAX Registration.

138.  Shane Smith of Mass Depot acted as an agent of Timken when filing infringement complaints against Plaintiff in late 2023.

139.  Plaintiff stocked and resold new, genuine Ultimax Products, each bearing a true mark, via online sales channels.

140.  Defendants have submitted one or more complaints to Amazon that state that Plaintiff sold infringing Ultimax Products.

COMPLAINT - 25

141.   Specifically, on behalf of Timken, Shane Smith submitted false intellectual property infringement reports to Amazon and signed each report under penalty of perjury.

142.   These reports specifically targeted Plaintiff.

143.   The reports to Amazon by Smith were authorized by and filed on behalf of Timken to interfere improperly with Plaintiff's ability to sell Ultimax Products on Amazon.

144.   Defendants have submitted at least 267 complaints to Amazon representing that Plaintiff sold Ultimax Products that infringed, inter alia, the Ultimax Registrations.

145.   The Ultimax Products sold by Plaintiff were genuine and in their original packaging.

146.    The complaints by Defendants caused the suspension of Plaintiff's selling privileges as to all products that Plaintiff offered, including the Ultimax Products.

147.    Defendants' complaints put Plaintiff in jeopardy of permanent suspension of all selling privileges, which will cause extraordinary, irreparable, and untold damage on a business that is in the virtually exclusive business of selling products on e-commerce platforms.

148.   Under these facts, an actual controversy exists between Plaintiff and Defendant Timken.

149.   Plaintiff is entitled to a declaratory judgment that it has not violated Timken's trademark rights or other rights, whether under Federal or State law.

## COUNT II – DEFAMATION
### (Ohio Revised Code §§ 2323.01, 2739 *et seq.*)

150.   Plaintiff realleges and incorporates previous paragraphs 1-124.

151.   Defendants published false statements to Amazon regarding Plaintiff as described in this Complaint, including reporting to Amazon that Plaintiff's Ultimax Products infringed the Ultimax Registrations.

152.   Plaintiff did not infringe the Ultimax Registration.

153.   Defendants' false statements were injurious to Plaintiff's business reputation and its business because the mere filing of so many infringement reports in a short period of time, regardless of their merits, have been counted against Plaintiff's Account Health Rating (AHR) with Amazon. Plaintiff's complaints directly caused Plaintiff's AHR to fall so low that Amazon suspended Plaintiff's selling privileges related to all products, including the Ultimax Products.

154.   Even though its selling privileges have been restored as to many products, the volume of Timken's reports have not been withdrawn or purged

from the Amazon AHR system and continue to harm Plaintiff's business in the form of a significantly diminished ability to gain the premium "Buy Box" position for its remaining listings, reduced credibility with Amazon's account services team, and reduced willingness to give Plaintiff the benefits of any doubt in issues that arise in the normal course of business on Amazon. In short, Timken's report volume has caused Amazon to label Plaintiff as a bad actor regardless of the truth.

155.  On information and belief, Defendants were, at a minimum, negligent in making the false statements to Amazon because, among other things, Defendants knew that Plaintiff sells genuine products.

156.  Defendants' false statements are not protected by any privilege.

157.  Defendants acted with actual malice or with reckless disregard for the truth of the matter contained in Defendants' false statements to Amazon and Plaintiff's customers.

158.  False statements that are directed to the honesty, efficiency, or the business character traits amount to defamation per se.

159.  Here, Defendants published statements that Plaintiff was engaged in trademark infringement.

160.  Plaintiff bought all of its ULTIMAX products from distributors authorized by Timken to sell products for resale. Those products bore bona fide marks that were applied with the authority of Timken.

161.  Plaintiff incurred special harm, including, but not limited to, suspension from selling Ultimax Products and damage to its relationship with Amazon and its customers.

162.  Whether by defamation per se or by special harm, Plaintiff has suffered injury as Plaintiff's selling privileges related to Ultimax Products have been suspended and Plaintiff has lost sales of Ultimax Products and many other products.

163.  Specifically, on behalf of Timken, Smith submitted an extraordinary number of false intellectual property infringement reports to Amazon and signed each report under penalty of perjury.

164.  These reports specifically targeted Plaintiff.

165.  Smith was authorized by Timken as its agent to submit reports to Amazon through Brand Registry directed against SoCal.

166.  On information and belief, the infringement reports were filed with Amazon with an intent to harm Plaintiff's business and cause Amazon to suspend Plaintiff's selling privileges.

167.  Plaintiff is entitled to damages, costs, and fees as allowed by law.

168.  Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

## COUNT III – TORTIOUS INTERFERENCE WITH EXISTING BUSINESS ADVANTAGE

169.  Plaintiff realleges and incorporates previous paragraphs 1-124.

170.  Plaintiff has had an advantageous business relationship with Amazon which allows Plaintiff to sell on Amazon's e-commerce platform as a third-party seller.

171.  Plaintiff is also in a contractual relationship with Amazon.

172.  At all relevant times, Defendants were aware of Plaintiff's business relationship with Amazon, as well as Plaintiff's contractual relationship with Amazon.

173.  At all relevant times, Defendants were aware of the terms and conditions of Amazon, as well as the advantageous business relationship that comes with being an Amazon seller.

174.  Defendants intentionally and improperly interfered with Plaintiff's advantageous relationship with Amazon by falsely claiming, with knowledge of such falsity, to Amazon, that Plaintiff was selling products that infringed Timken's trademark rights.

175.  Defendants' conduct directly and proximately caused disruption of Plaintiff's relationship with Amazon and continues to harm Plaintiff's relationship with Amazon.

176.  Defendants intended to cause Amazon to suspend Plaintiff's ability to sell Ultimax Products on Amazon and therefore interfere with the business relationship Plaintiff has had with Amazon.

177.  Defendants had actual knowledge that their actions would cause Amazon to suspend Plaintiff's ability to sell products on Amazon, including the Ultimax Products on Amazon.

178.  Defendants' accusations of infringement, made directly to Amazon were made for the improper purpose of suppressing competition.

179.  Defendants' actions interfered with Plaintiff's business relationship with Amazon and proximately caused Plaintiff's listings of all products, including those of the Ultimax Products to be suspended.

180.  Defendants' accusations were false and were made maliciously and with ill will.

181.  Defendants continued to submit false reports to Amazon even after being advised by Plaintiff that the reports were false and Plaintiff requested support for the allegations.

182.  Specifically, on behalf of Timken, Smith submitted false intellectual property infringement reports to Amazon and signed each report under penalty of perjury.

183.  These reports specifically targeted Plaintiff.

184.  The reports to Amazon would not have been possible without the participation of each of the Defendants. Specifically, Timken provided Smith with access to, and authority under, the ULTIMAX Registration for purposes of submitting reports to Amazon through Brand Registry. Timken could have revoked this right at any time.

185.  In the relevant time period, Smith was an agent for Timken and acted under the direction and authority of Timken to interfere with Plaintiff's ability to sell ULTIMAX Products on Amazon.

186.  Plaintiff has been damaged by suspension of all of its product listings, including those for the Ultimax Products, by losing revenue related to those products and for all other products it was selling during the period of suspension.

187.  Plaintiff is entitled to damages, costs and attorneys' fees as allowed by law.

188.  Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

## COUNT IV - OHIO DECEPTIVE TRADE PRACTICES ACT
### (ODTPA § 4165.01 ET SEQ.)

189.  Plaintiff realleges and incorporates previous paragraphs 1-124.

190.   Defendants Timken and Smith violated the Ohio Deceptive Trade Practices Act ("ODTPA"), R.C. 4165.01, *et seq*., by, inter alia, causing likelihood

of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the products sold by SoCal, or causing likelihood of misunderstanding by Amazon as to affiliation, connection or association of SoCal with or certification by Timken of the products sold by SoCal.

191.    Defendant Smith, acting as an agent for Defendant Timken, made a series of false statements or statements that were misleading to Amazon regarding the products sold by SoCal.

192.    The statements made by Smith on behalf of Timken actually deceived Amazon or had the tendency to deceive Amazon as the intended target audience.

193.    Smith's false statements were material to the actions and decisions made by Amazon in connection with SoCal's selling privileges.

194.    As a result of the false statements made to Amazon, SoCal has been and continues to be injured as a result.

**PLAINTIFF'S REQUESTED RELIEF**

WHEREFORE, the Plaintiff prays for judgment as follows:

A.    An order declaring that Plaintiff has not infringed any valid and enforceable intellectual property right owned by Timken, including the Ultimax Registration;

B.    Permanent injunctive relief restraining Defendants, their agents, servants, employees, successors and assigns, and all others in concert and privity

with Defendants, from filing complaints with Amazon and any other ecommerce platform alleging that the products sold by SoCal infringe any trademark right of Timken;

C.     Injunctive relief requiring Defendants to rescind all complaints that they have filed on Amazon against Plaintiff;

D.     Injunctive relief requiring Amazon to delete and purge from its systems all complaints that Defendants have filed against Plaintiff, including the effects of those infringement reports on SoCal's Account Health Rating;

E.     An award of all damages that Plaintiff has suffered as a result of Defendants' tortious interference;

F.     An award of all damages that Plaintiff has suffered as a result of Defendants' defamation;

G.     An award of all costs and fees incurred in this Action; and

H.     Such other and further relief as the Court shall find just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

COMPLAINT - 34

DATED: November 29, 2024      For Plaintiff:

By:    __/s/ *Andrew C. Stebbins*_____
astebbins@bdblaw.com
BUCKINGHAM, DOOLITTLE &
BURROUGHS, LLC
1375 E. 9th Street, Suite 1700
Cleveland, OH 44114
Telephone: (216) 621-5300
Facsimile: (216) 621-5440

Lance G. Johnson (*Pro Hac Vice to be filed*)
lance@lgjlegal.com
JOHNSON LEGAL PLLC
12545 White Drive
Fairfax, Virginia 22030
Telephone: (202) 445-2000
Facsimile: (888) 492-1303

Attorneys for Plaintiff,
SOCAL POWERSPORTS, INC.
.

COMPLAINT - 35