UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| SoCal Powersports, Inc., | ) | CASE NO. 5:24 CV 2085 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| The Timken Co., et al., | ) | |
| | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendants. | ) | |

INTRODUCTION

This matter is before the Court upon Defendant The Timken Company's Motion to Dismiss (Doc. 17), which was joined by defendant Shane Smith. This is a diversity action alleging defamation, tortious interference, and violation of Ohio Deceptive Trade Practices Act. For the reasons that follow, Defendant The Timken Company's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.

BACKGROUND

For purposes of ruling on the pending motion to dismiss, all well-plead factual allegations in plaintiff's Complaint (Doc. 1) are presumed true. Plaintiff SoCal Powersports, Inc. ("SoCal" or "Plaintiff") resells products on Amazon, including, relevant here, Ultimax brand power transmission belts. These belts have been sold under different brand names in the past, including by

"Dayco" and "Carlisle." Most recently, defendant The Timken Company ("Timken") purchased the brand from Carlisle. Since at least September 30, 2021, Timken has manufactured and marketed the previous Carlisle belts as "Ultimax belts by Timken." SoCal was an authorized distributor of the belts under Carlisle's ownership and Timken has confirmed that SoCal continued to be an authorized reseller of Ultimax belts as of April 15, 2024. (Doc. 1-3.)

On December 17, 2023, Timken notified SoCal that Timken had updated its brand guidelines to include a new policy that prohibited online sales through third-party websites and a new "Minimum Advertised Price" for those products. The guidelines also advised that "[p]revious brands such as Carlisle or Dayco should NEVER be used in association with the Ultimax brand or product." (Doc. 1-2, at 2.) The policies announced were retroactively effective as of December 15, 2023, but Timken wrote that it would take the "late notice . . . into consideration to allow [SoCal] an opportunity to update [its] online content." (*Id.* at 1.)

Before it sent SoCal this notice, however, Timken, through defendant Shane Smith ("Smith" and, together with Timken, "Defendants"), filed at least 267 reports with Amazon alleging that SoCal was selling trademark infringing products. Defendants filed these reports between November 30, 2023, and December 17, 2023. Although the reported listings were for products that SoCal purchased from authorized dealers of Ultimax products, the depicted products included Carlisle's name on the packaging. Defendants represented in their reports to Amazon that "[a] brand called 'Carlisle' is using our Ultimax trademark on the packaging[.]" (Doc. 1 ¶ 73.)

In response, Amazon notified SoCal that it had received reports of trademark infringement from Defendants. Amazon's notice informed SoCal that Amazon had removed each reported listing but that it "may let [SoCal] list this content again if [Amazon] receive[s] a retraction from the rights

2

owner." (*Id.* ¶ 70.) The notice also directed SoCal to visit Amazon's "Account Health page in Seller Central" to appeal the listing deactivation and included a link to that page. Finally, the notice informed SoCal that Amazon may provide SoCal's contact information to Defendants if Defendants did not "retract their complaint, or [SoCal did] not provide supporting information[.]" (*Id.*)

According to SoCal, when it asked Defendants to retract the complaints through Amazon, they refused.[1] SoCal provided Amazon invoice receipts showing authenticity of the Ultimax products but substantially all of the appeals were rejected because, according to SoCal, "Amazon no longer accepted receipts as proof of authenticity." (*Id.* ¶ 10.) Rather, "Amazon needed a retraction of the complaints done only through the same Brand Registry system that was used to file the reports and then only within 180 days from when those reports were filed." (*Id.*)

The reports tanked SoCal's Account Health Rating ("AHR"), which led to Amazon suspending the entirety of SoCal's selling privileges from February 2024 until August 2024. All SoCal's listings for the Ultimax products remain deactivated. As a result, SoCal alleges that it has suffered losses, including, loss of product sales during the period of deactivation and diminished sales after reactivation due to the damage to its AHR rating.

SoCal filed this action against Defendants on November 29, 2024. Defendants move to dismiss SoCal's entire complaint.[2] SoCal opposes the motion.

--------

[1] Defendants did eventually provide a letter of authorization to Amazon on April 15, 2024, representing that "SoCal . . . a dealer in good standing with Timken .. . is authorized to purchase and resell Ultimax belts through authorized channels. This seller is authorized to use [Timken's] intellectual property including trademark, images and fitment data in the course of product advertisement for online sales until further notice." (Doc. 1-3.)

[2] On February 20, 2025, Timken filed the present motion to dismiss. On March 3, 2025, Smith filed a notice joining in Timken's motion to dismiss. (Doc. 18.) Smith does not present any unique

## STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 335 F. App'x 587, 588 (6th Cir. 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). That said, the complaint must set forth "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The Court is not required to accept as true legal conclusions or unwarranted factual inferences. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A

---

grounds for dismissing the claims against him, but rather incorporates Timken's motion "as though fully rewritten[.]" (*Id.* at 1.) Smith likewise filed a notice joining Timken's reply in support of its motion to dismiss. (Doc. 25.)

complaint that merely offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*

## ANALYSIS

In its Complaint, SoCal alleges causes of action against Defendants for (1) defamation, (2) tortious interference with existing business advantage, and (3) violating the Ohio Deceptive Trade Practices Act. SoCal also seeks a declaratory judgment that it has not violated Timken's trademark rights. Defendants move to dismiss all four causes of action.

### 1. Defamation and Tortious Interference with Existing Business Advantage

Although separate causes of action, Defendants contend that both claims should be dismissed because either (1) SoCal has not alleged that Defendants' actions were the proximate cause of SoCal's injuries, or (2) even if their actions were the proximate cause of SoCal's injuries, the trademark infringement reports sent to Amazon are protected by a qualified privilege.[3] The Court considers each argument in turn.

––––––––––––––––––––

[3] To plead a defamation claim under Ohio law, a plaintiff must allege "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault[.]" *Anthony List v. Driehaus*, 779 F.3d 628, 632–33 (6th Cir. 2015) (quoting *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832 (Ohio 2012)). A plaintiff pleads a claim for tortious interference with a business relationship by alleging (1) the existence or the prospect of a business relationship; (2) that defendant knew of the relationship; (3) that defendant intentionally and materially interfered with the plaintiff's prospective relationship; (4) the interference was without justification or privilege; and (5) the interference caused the plaintiff to suffer damages. *Wauseon Plaza Ltd. P'ship. v. Wauseon Hardware Co.*, 807 N.E.2d 953, 962–63 (Ohio Ct. App. 2004).

Defendants do not contend that SoCal failed to allege any element of either claim besides proximate cause. Defendants do contend summarily that their "infringement reports to Amazon were not false" (Doc. 17-1, at 10–11), but offer no explanation as to how SoCal has insufficiently plead this

5

### A.  Proximate Cause

In Ohio, "the proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred." *Aiken v. Indus. Comm'n*, 53 N.E.2d 1018, 1020 (Ohio 1944). There will always be some cause or act (even if just the wind) that intervenes between the initial action and the injury, and an injury can have more than one proximate cause. *NOCO Co. v. OJ Commerce, LLC*, 35 F.4th 475, 482–83 (6th Cir. 2022) (citing *Murphy v. Carrollton Mfg. Co.*, 575 N.E.2d 828, 830 (Ohio 1991)).

Some intervening causes "unite[ ] with the original act to cause injury." *Doyle v. Fairfield Mach. Co.*, 697 N.E.2d 667, 679 (Ohio Ct. App. 1997). This happens when the original cause "put in motion the sequence of events leading to the injury." *Id.* In that case, the original wrongdoer is still liable. *Id.* "At other times, however, an intervening cause will break the causal chain." *NOCO*, 35 F.4th at 483 (citing *Czarney v. Porter*, 853 N.E.2d 692, 694 (Ohio Ct. App. 2006) (further citation omitted)). The break of the causal chain is a called a "superseding cause" that relieves the original party of liability. *See McRoberts v. Dayton Power Light Co.*, 757 N.E.2d 1230, 1236 (Ohio Ct. App. 2001).

In the end, determining whether a defendant was a proximate cause of a plaintiff's injury depends on whether "the defendant's action and the plaintiff's injury are connected to such a 'significant degree' as to justify 'imposing liability.'" *NOCO*, 35 F.4th at 482 (quoting *Walls v. Durrani*, 2021 WL 5860869, at *2 (Ohio Ct. App. Dec. 10, 2021)). This determination often turns

---

element of its defamation claim. To be sure, SoCal did allege, more than once, that Defendants knew the infringement reports they submitted to Amazon were false. (*E.g.*, Doc. 1 ¶¶ 66, 83.)

6

on whether an intervening cause was reasonably foreseeable by the original actor. If it was, the
original actor will be liable. *Id.* at 483 (citing *Cascone v. Herb Kay Co.*, 451 N.E.2d 815, 819 (Ohio
1983)).

Here, Defendants contend that two superseding causes relieve them of any liability: (1)
Amazon's own investigation into Defendants' reports of trademark infringement and (2) SoCal's
own failure to provide Amazon sufficient documentation during that investigation. To support their
contention, Defendants point this Court to the Sixth Circuit's opinion in *NOCO Co. v. OJ
Commerce, LLC*, 35 F.4th 475 (6th Cir. 2022).

In *NOCO*, a company called OJ Commerce, LLC "OJC" was selling NOCO's products on
Amazon without NOCO's authorization. *Id.* at 479. NOCO submitted multiple reports to Amazon
under Amazon's anti-counterfeiting policy. *Id.* "That policy prohibits a seller from listing
counterfeit products and products that infringe on another's intellectual property. It also permits
Amazon to ask for proof of authenticity and authorization to sell." *Id.*

Between October 2, 2019, and January 6, 2020, NOCO filed six complaints. *Id.* "In response
to each, Amazon sent a warning to OJC that it was violating NOCO's intellectual property rights.
Amazon removed the products from the website and gave OJC ninety days to provide documents to
the contrary." *Id.*

Amazon and OJC shared more than one correspondence about NOCO's reports. Through
these correspondences, OJC submitted different documentation, each time failing to satisfy Amazon
of OJC's authorization to sell NOCO's products. With each new correspondence, Amazon asked
for other documentation. Eventually, Amazon deactivated OJC's account because Amazon had "not
received a valid plan of action addressing the listings[.]" *Id.*

7

NOCO brought suit against OJC for selling its products without authorization and OJC filed counterclaims against NOCO for (1) defamation, (2) tortious interference with a business relationship, and (3) a violation of the Ohio Deceptive Trade Practices Act. On NOCO's motion for summary judgment, the district court, and then the Sixth Circuit, determined that OJC's claims failed because it could not establish that NOCO was the proximate cause of its injuries because three intervening causes broke the causal chain: (1) a complaint from a separate manufacture,[4] (2) Amazon's own investigation, and (3) OJC's own failure to provide the documents necessary to satisfy Amazon's investigation.

Here, Defendants contend that *NOCO* "is nearly identical to this case" (Doc. 17-1, at 11), and ask this Court to apply it to dismiss SoCal's claims. While there are some factual similarities between the present case and *NOCO*, there are several key legal and factual distinctions between the two that prevent *NOCO* from controlling the outcome here.

First, *NOCO* was decided on a motion for summary judgment. Accordingly, the Sixth Circuit's decision relied on the evidence in the record. For example, in finding that Amazon's investigation was a superseding cause, the court cited to evidence that Amazon had conducted its own investigation into the reports of trademark infringement. *NOCO*, 34 F.4th at 485 ("Amazon sent multiple warning emails to OJC before deactivating OJC's account. This shows that Amazon did, in fact, investigate the claims and that NOCO had no role in the investigation or the ultimate

_____

[4] During Amazon's investigation into NOCO's reports, another party, Emson, filed a complaint with Amazon stating that OJC violated its patent. The Sixth Circuit analyzed the role this separate complaint played in NOCO's liability for Amazon's decision to deactivate OJC's account but found that the outcome on the legal issues would have been the same regardless of Emson's complaint. *Id.* at 484.

decision. OJC provided no evidence to the contrary."). The Court also relied on record evidence in finding that the plaintiff's "account was suspended because of its failure to submit documents that satisfied either of Amazon's policies." *Id.* at 486. The Court pointed to emails Amazon sent after every complaint "asking for documentations that prove it was following the policies." *Id.*

Here, the Court is presently concerned not with evidence but with what facts SoCal has alleged in its Complaint. While Defendants contend that Amazon "followed its policies, investigated [Defendants'] infringement reports, and removed the SoCal listings it deemed to infringe Timken's trademark" (Doc. 17-1, at 13), it does not point to any place in SoCal's Complaint that alleges this is what occurred. In reality, SoCal does not allege that Amazon did any independent investigation into Defendants' reports of trademark infringement. In fact, SoCal alleges that Amazon does not do any independent investigation into claims of trademark infringement. Whether or not SoCal can ultimately substantiate these allegations with evidence is not for the Court to decide at this juncture.

Second, unlike the evidence in *NOCO*, there are no allegations that SoCal itself failed to provide any specific documentation that Amazon requested. Rather, SoCal alleges that it did seek the retraction letter from Defendants that Amazon requested, but Defendants refused to provide it in a timely manner. As SoCal has alleged, to cure Defendants' reports of trademark infringement, "Amazon needed a retraction of the complaints done only through the same Brand Registry system that was used to file the reports and then only within 180 days from when those reports were filed." (Doc. 1 ¶ 10.)

To address this allegation, Defendants contend that "Amazon notified SoCal of several ways to dispute and appeal Amazon's investigation and decisions to remove the reported listings and

suspend SoCal's account." (Doc. 17-1, at 15.) Defendants do not point to any allegations in the Compliant stating as such but, instead, ask this Court to take judicial notice of certain Amazon policies attached as exhibits to their motion. Although these policies are not explicitly referenced or cited in SoCal's Complaint, Defendants contend they are, nevertheless, central to SoCal's claims and the Court should consider them.

While the Court ruling on a Rule 12(b)(6) motion, may consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein," *Bassett*, 528 F.3d at 430, the Court does not consider statements in these documents for the truth of the matter asserted to resolve disputed allegations. *See In re Omnicare, Inc. Secs. Litig.*, 769 F.3d 455, 467–68 (6th Cir. 2014). Thus, even though the policies cited by Defendants do list several avenues a reported seller can take to appeal an infringement report,[5] the Court, on Defendants' motion to dismiss, cannot consider whether these options were available to SoCal in this case. Rather, this Court must accept as true SoCal's allegations that Amazon would not accept other documentation and, instead, needed a retraction of the complaints from Defendants within 180 days from when those reports were filed.

---

[5] Defendants claim that these avenues include "modify[ing] the product detail page or pages to ensure they do not infringe the trademark," "provid[ing] supporting documentation (e.g., letter of authorization, licensing agreement)" so that Amazon could "reevaluate the notice," providing "invoices proving authenticity of [its] products," providing "Amazon order IDs demonstrating product authenticity," providing an "authorization letter from the rights owner," providing a 'court order finding that [the seller's] product does not infringe,' or providing a "viable Plan of Action" for Amazon to evaluate and determine if the account should be reinstated. (Doc. 17-1, at 15 (citing 17-4, at 2–3).)

For this reason, SoCal's allegation that Defendants refused to provide the necessary retraction letter is a key distinction between this case and *NOCO*—especially as it pertains to proximate cause. The Sixth Circuit's analysis in *NOCO* of analogous causation issues in malicious prosecution cases is informative here:

> Typically, in those cases, a plaintiff who was wrongfully prosecuted sues the police officer whose actions began the criminal proceedings. The plaintiff generally argues that false information provided by the investigating officer began a chain of events that eventually caused the criminal proceedings. And, like NOCO, the officer responds that the chain of causation was broken because prosecutors and courts independently determine issues like probable cause.

> How do we decide those cases? We look at whether the officer's actions influenced the final decision. For example, in *Gregory*, the plaintiff brought malicious prosecution claims against two officers based on some false investigatory notes and false testimony at a hearing. *Gregory v. City of Louisville*, 444 F.3d 725, 757 (6th Cir. 2006). We found that the false investigatory notes were not linked to the court's decision, so the claim based on them couldn't proceed to the jury. *Id.* at 759–60. But the false testimony directly factored into the court's decision, so that claim could. *Id.* at 758–59. And in *Sykes* too, we explained that even though it was the prosecutor who made the decision, there was still "ample evidence" of the officer's "influence[] or participat[ion]" in the ultimate decision to prosecute. *Sykes*, 625 F.3d at 317. Compare that with *DePiero*, where we rejected a malicious prosecution claim because the officer "had no role" in issuing the warrant. *DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999).

*NOCO*, 35 F.4th at 485.

Here, SoCal alleges that Defendants started the chain of events that led to SoCal's injuries by filing false trademark infringement reports with Amazon. But unlike the reporting party in *NOCO*, Defendants' involvement in the chain of events did not end there. According to SoCal's allegations, Amazon would only remove the infringement reports if SoCal provided a retraction letter from Defendants within 180 days of the reports. SoCal alleges that it asked Defendants for this letter, but Defendants refused to provide it in a timely manner. Because Defendants refused to provide the necessary retraction, Amazon withdrew SoCal's selling privileges.

11

For these reasons, the Court finds that SoCal has sufficiently alleged that Defendants' actions were plausibly a proximate cause of SoCal's injuries because they influenced Amazon's final decision. *NOCO*, 35 F.4th at 485 (citing *Gregory*, 444 F.3d at 758–59).

### B. Qualified Privilege

Having determined that SoCal has plausibly alleged that Defendants were a proximate cause of its injuries, the Court turns to Defendants' alternative argument that the reports it communicated to Amazon are protected by qualified privilege. Under Ohio law, qualified privilege is a defense to allegations of defamation and tortious interference with a business relationship. *McNett v. Worthington*, 2011 WL 4790759, at *3 (Ohio Ct. App. Oct. 11, 2011).

A communication becomes privileged when it is "'fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.'" *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1290 (Ohio 1995) (citation omitted). To prevail on a qualified privilege defense, the defendant must establish "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *A & B-Abell Elevator Co.*, 651 N.E.2d at 1290 (quoting *Hahn v. Kotten*, 331 N.E.2d 713, 719 (Ohio 1975)).

It is enough to establish a qualified privilege if "the relation of the parties should be such as to afford reasonable ground for supposing an innocent motive for giving information." *Id.* at 1291–92 (emphasis, internal quotation marks, and citation omitted). Whether the motive was actually innocent is immaterial to establishing a qualified privilege. *Id.* at 1292 ("The issue of 'good faith'

necessary to establish the privilege should not be confused with the issue of 'state of mind' necessary to defeat it.").

Once, however, a party establishes the existence of a qualified privilege, the opposing party can overcome the defense by establishing that the party acted with actual malice. *Id.* at 1291. Under Ohio law, actual malice in the context of a qualified privilege defense "is defined as acting with[ ] knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id.* at 1292 (quoting *Jacobs v. Frank*, 573 N.E.2d 609, 614 (Ohio 1991)). Actual malice may also be established by demonstrating the statements were made with ill will, spite, a grudge, or some ulterior motive. *McNett*, 2011 WL 4790759, at *3 (citing *DeAngelo v. W.T. Grant Co.*, 111 N.E.2d 773, 776 (Ohio Ct. App. 1952)).

Here, SoCal has alleged sufficient facts suggesting that Defendants acted with actual malice by submitting trademark infringement reports to Amazon even though Defendants knew these reports were without merit because Defendants knew SoCal was an authorized seller of the products listed. *See Arms Trucking Co. v. Fannie Mae*, 2014 WL 6139969, at *7 (Ohio Ct. App. Nov. 17, 2014) ("[To overcome qualified privilege defense, counterclaimants] were required to allege in their counterclaim that Arms Trucking had no interest in the property and facts showing actual malice on the part of Arms Trucking, *i.e.*, that Arms Trucking knew it had no interest in the property or was reckless in that regard."). SoCal also alleges that Defendants filed the false reports with Amazon to suppress competition by driving SoCal off Amazon. These allegations plausibly suggest that

13

Defendants acted with ill will, spite, a grudge, or some ulterior motive when falsely reporting SoCal's authorized product listings to Amazon for trademark infringement.[6]

For all the aforementioned reasons, SoCal has alleged sufficient facts to proceed on its defamation and tortious interference claims against Defendants. Accordingly, Defendants' motion to dismiss these claims is denied.

### 2. Ohio Deceptive Trade Practices Act

Defendants also move to dismiss SoCal's claim that Defendants violated the Ohio Deceptive Trade Practices Act ("ODTPA"). Ohio Rev. Code § 4165.02 governs deceptive trade practices and lists numerous ways one can engage in such a practice. The statute provides, in relevant part that "[a] person engages in a deceptive trade practice when, in the course of the person's business,

---

[6] Defendants contend in their motion that "to overcome a qualified privilege, the plaintiff 'must plead facts demonstrating actual malice' by clear and convincing evidence." (Doc. 17-1, at 16.) Defendants' contention conflates what is required on a motion to dismiss (pleading facts demonstrating actual malice) and what is required to ultimately prevail over a qualified privilege defense (establishing actual malice through clear and convincing evidence). There is no legal requirement, however, that plaintiffs "plead facts demonstrating actual malice by clear and convincing evidence" in their complaint. *See Stockley v. Nissan of N. Am., Inc.*, 701 F. Supp. 3d 682, 699 (M.D. Tenn. 2023) (finding that even under heightened pleading standards, "a plaintiff, when drafting a complaint, 'is not required to plead evidence,' only assertions of fact" (citing *McCall v. Scott*, 239 F.3d 808, 815 (6th Cir. 2001) (further citation omitted)).

Further, to challenge the sufficiency of SoCal's allegations of malice, Defendants rely almost exclusively on unpublished court holdings that do not apply Ohio law, but rather apply different malice standards. (Doc. 17-1, at 17 (citing *e.g.*, *Editor's Pick Luxury LLC v. Red Points Sols. SL*, 2023 WL 6385993, at *3 (S.D.N.Y. Sept. 29, 2023) (applying New York law) ("Common-law malice mean[s] spite or ill will, and will defeat the privilege only if it is the one and only cause for the publication."); *iMerchandise LLC v. TSDC, LLC*, 2021 WL 1222197, at *3 (D. Conn. Mar. 31, 2021) (applying Connecticut law) ("'Malice' . . . is used 'not in the sense of ill will,' but rather to signify that the interference was 'without justification.'")).) Defendants do not explain how these differing standards weigh on the sufficiency of SoCal's allegations and, accordingly, this Court finds they are neither controlling nor persuasive.

14

vocation, or occupation, the person does any of the following," including "[c]auses likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services[,]" or "[c]auses likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another[.]" Ohio courts have articulated the elements necessary for an ODTPA claim as (1) a false statement or statement that is misleading, (2) which statement actually deceived or has the tendency to deceive a substantial segment of the target audience, (3) the deception is material in that it is likely to influence a purchasing decision, and (4) the plaintiff has been or is likely to be injured as a result. *Torrance v. Rom*, 157 N.E.3d 172, 187–88 (Ohio Ct. App. 2020).

Defendants contend that SoCal has failed to state claim under the ODTPA because it has not alleged that Defendants' reports to Amazon constitute dissemination to a target audience to influence a purchasing decision.[7] This Court agrees.

In its Complaint, SoCal alleges that Defendants violated the ODTPA by "causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the products sold by SoCal, or causing likelihood of misunderstanding by Amazon as to affiliation, connection or association of SoCal with or certification by Timken of the products sold by SoCal." (Doc. 1 ¶ 190.) SoCal's allegations make clear that it considers "Amazon as the intended target audience" and that Defendants' reports "were misleading to Amazon." (*Id.* ¶¶ 190–94.) There are

---

[7] Defendants also contend that SoCal's ODTPA claims should be dismissed for failing to allege that Defendants were the proximate cause of any harm SoCal suffered. For all the reasons discussed by this Court above, SoCal has sufficiently alleged that Defendants were plausibly a proximate cause of the injuries it suffered.

15

no allegations, however, that these reports influenced any purchasing decision of Amazon (the intended target audience). In its opposition to Defendants' motion, SoCal does not provide any contention to the contrary.[8]

For these reasons, Defendants motion to dismiss SoCal's claim that Defendants violated the ODTPA is granted, and this claim is dismissed.

### 3. Declaratory Judgment

Lastly, Defendants move to dismiss SoCal's cause of action seeking a declaratory judgment that it has not violated Timken's trademark rights. Federal courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). In fact, district courts are afforded "substantial discretion to exercise jurisdiction 'in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and [the] fitness of the case for resolution, are peculiarly within their grasp.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton*, 515 U.S. at 289).

---

[8] At most, SoCal contends in a footnote that "[a]lthough not specifically pleaded, the ODTPA also makes product disparagement actionable." (Doc. 20, at 15 n.4 ("The Ohio Deceptive Trade Practices Act states that "[a] person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . (10) Disparages the goods, services, or business of another by false representation of fact. O.R.C. § 4165.02(A)." (citing *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 894–95 (N.D. Ohio 2008))).) SoCal submits that "[i]f the [C]ourt requires an express citation to this portion of the ODTPA to sustain Count IV, [SoCal] will agree to file an amended complaint adding this citation[.]" (*Id.*) To the extent SoCal intended this footnote to serve as a motion to amend its Complaint, the motion is not well taken and denied. *See, e.g.*, *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004), *abrogated on other grounds by Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought … does not constitute a motion within the contemplation of Rule 15(a).").

Courts in the Sixth Circuit consider five factors (the "*Grand Trunk* factors") to determine whether the exercise of Declaratory Judgment Act jurisdiction is appropriate:

> (1) [W]hether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted)). "[The] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993).

Having considered and weighed the *Grand Trunk* factors in light of the Complaint's allegations, this Court finds it is appropriate to exercise jurisdiction over SoCal's claim for a declaratory judgment.

SoCal has alleged an actual case or controversy against Defendants. While the declaratory judgment may not settle the entire controversy, it will serve a useful purpose in clarifying the legal relations in issue. SoCal alleges Defendants knowingly made false trademark infringement reports. SoCal alleges it suffered injuries as a result of these false reports, including lost revenue from the deactivation of its online listings for the reported Ultimax belts, which remain deactivated. Defendants seem to claim that the reports were neither false nor otherwise made with malice, which absolves it of liability for any injuries SoCal suffered. Thus, clarifying whether SoCal did infringe

Timken's trademark protections is directly relevant to SoCal's claims against Defendants for defamation and tortious interference and Defendants' purported defense of qualified privilege.

Concerning the remaining factors, there is no reason to suspect that the declaratory judgment is being used merely for the purpose of procedural fencing. Further, a declaratory judgment involving analysis of federal trademark law is unlikely to increase friction between federal and state courts, and the Court cannot say any alternative remedy would be better or more effective at resolving this relevant issue.

For all these reasons, the Courts finds it appropriate to exercise its jurisdiction to allow SoCal to seek a declaratory judgment that it has not violated Timken's trademark rights by selling the reported Ultimax products. Accordingly, Defendants' motion to dismiss SoCal's declaratory judgment action is denied.

## **CONCLUSION**

For all the aforementioned reasons, Defendant The Timken Company's Motion to Dismiss is GRANTED IN PART AND DISMISSED IN PART. This case shall proceed as to SoCal's Count I (declaratory judgment), Count II (defamation), and Count III (tortious interference with an existing business advantage).


IT IS SO ORDERED.

                                                   /s/ Patricia A. Gaughan
                                                  PATRICIA A. GAUGHAN
                                                  United States District Judge
Dated:  4/28/25